IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01053-REB-KMT

STANLEY E. JONES,

    Plaintiff,

v.

TWO UNKNOWN DOC GUARDS, a/k/a
SGT. T. COOK and
JAMES KELLER

    Defendants.

---

# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

    This civil rights suit involves allegations that Defendants were deliberately indifferent to Plaintiff's serious medical need, in violation of the Eighth Amendment. The matter is before the court on "Defendants' Motion for Summary Judgment" (Doc. No. 58 [Mot.]) and "Plaintiff's Response" (Doc. No. 61 [Resp.]). Plaintiff asserts jurisdiction under 28 U.S.C. § 1343 and 42 U.S.C. § 1983. For the reasons that follow, the court recommends that Defendants' Motion be granted.

## STATEMENT OF THE CASE

    The following account is taken from Plaintiff's Prisoner Complaint (Doc. No. 3 [Compl.]) and Defendants' Motion. Plaintiff is incarcerated at the Limon Correctional Facility

(LCF), within the Colorado Department of Corrections (CDOC). (Mot. at 1.) In March of 2007, Plaintiff was transferred from LCF to the Colorado Territorial Correctional Facility (CTCF) for cancer and low oxygen treatment. (Compl. at 3; Mot. at 1.) On April 24, 2007, he was transferred back to LCF. (Compl. at 4; Mot. at 1.) Plaintiff asserts one claim arising out of his return transfer from CTCF to LCF. He alleges that Defendants, the transporting officers, violated his Eighth Amendment right to be free of cruel and unusual punishment when they took his oxygen tank and transported Plaintiff for three hours without it. (Compl. at 4.) Plaintiff requests "any relief the court finds appropriate." (*Id.* at 8.)

Defendants move for summary judgment on the grounds that 1) there is insufficient evidence that Defendants were deliberately indifferent to a serious medical need, and 2) in the absence of a constitutional violation, Defendants are entitled to qualified immunity. (Mot. at 5.) Additionally, Defendants assert that there is insufficient evidence of physical injury to support a claim for compensatory damages. (*Id.*)

## PROCEDURAL HISTORY

Plaintiff filed his complaint on May 20, 2008. In it he named as defendants "unknown DOC guard AKA Sgt. T-Cook, Transportation officer" and "unknown DOC guard AKA Sgt. T-Cook's coworker, Transportation officer." (Compl. at 2.) On November 20, 2009, the court granted Plaintiff leave to amend his complaint to substitute the Defendant Keller for the unknown coworker defendant. (Doc. No. 48.) Defendants filed their motion for summary judgment on March 19, 2010, and Plaintiff filed his response on April 29, 2010. Defendants did not file a reply. The motion is ripe for review and recommendation.

## STANDARD OF REVIEW

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(e)(2). A disputed fact is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. Moreover, because Plaintiff is proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United*

*States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

## ANALYSIS

*1.     Eighth Amendment*

The Eighth Amendment's ban on cruel and unusual punishment is violated if a defendant's "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To establish a claim for deliberate indifference, a plaintiff must first prove that, objectively, his medical need is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (citation omitted). Second, the plaintiff must prove that, subjectively, the prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837. That is, "the official must both be aware

4

of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Although an Eighth Amendment claim regarding deliberate indifference to a serious medical need often involves an official's failure to treat a prisoner's serious medical condition properly, it may also arise when a prison official acts with deliberate indifference in preventing a prisoner from receiving treatment or denying him access to medical personnel capable of evaluating the need for treatment. *See Sealock v. Colorado*, 218 F.3d 1205, 12011 (10th Cir. 2000).

    *a.*    *Serious Medical Need*

Defendants argue that there is insufficient evidence that Plaintiff had a sufficiently serious medical need to require the use of a portable oxygen tank during transport. (Mot. at 8.) They rely on the affidavit of Dr. Paula Frantz, currently the Chief Medical Officer for CDOC, but not Plaintiff's treating physician. (Mot. Ex. A-3, ¶¶ 1, 8.) Dr. Frantz explains that an oxygen concentrator is a relatively large machine and is "typically meant to stay in a single room . . . to provide oxygen therapy in a person's individual living quarters or at night when the person is sleeping." (*Id.*, ¶¶ 32, 33.) A portable oxygen tank is used "only if the patient require[s] continuous oxygen therapy and need[s] to be on oxygen at all times." (*Id.*, ¶ 35.)

According to Dr. Frantz, Plaintiff's medical file reveals that Plaintiff suffers from Chronic Obstructive Pulmonary Disease (COPD). (*Id.*, ¶ 37.) He underwent surgery in August 2006 and was placed on portable oxygen therapy in the immediate post-operative period. (*Id.*, ¶¶ 16-21, 40, 46.) It is unclear to Dr. Frantz whether subsequent references to oxygen equipment refer to an oxygen concentrator or to a portable oxygen tank. (*Id.*, ¶¶ 23, 24, 26.) She notes that

the medical record reflects a well-documented need for an oxygen concentrator, but the need for portable oxygen is not well-documented. (*Id.*, ¶ 41.) Dr. Frantz concludes that although Plaintiff "had intermittent need for portable oxygen, it does not appear from review of his medical records that [Plaintiff] had a valid order for continuous oxygen therapy or use of portable oxygen on April 24, 2007." (*Id.*, ¶ 45.)

The evidence presented does not establish a serious medical need by virtue of a physician's diagnosis mandating treatment. Although Plaintiff asked to be transported with his "oxygen tank," there is no evidence that he had a portable oxygen tank at the time of transport.[1] Plaintiff was placed on continuous oxygen therapy following the surgery in August 2006. (Resp. Ex. A-3 at Attach. 4.) The medical record reflects that he continued to use portable oxygen through September 2006. (*Id.* at Attach. 5-7.) However, it appears that the continuous oxygen therapy was discontinued after September 2006. Medical provider notes from February and March 2007 indicate that Plaintiff "used to have portable oxygen" and "would benefit from it," but there is no evidence that authorization for portable oxygen was entered. (*Id.* at Attach. 9, 10.) This suggests that Plaintiff was not using portable oxygen on April 24, 2007. The records reflect that portable oxygen was authorized again on June 13, 2007. (*Id.* at Attach. 14.) Meanwhile, Plaintiff was authorized for an oxygen concentrator in September 2006. (*Id.* at Attach. 8.) Later records indicate that he continued to use the oxygen concentrator up to the date

---

[1] In his complaint, Plaintiff refers to his "oxygen tank." (Compl. at 3, 4.) In his Affidavit, Defendant Cook remembers Plaintiff asking for his "oxygen bottle." (Mot. Ex. A-2, ¶¶ 5, 6.) The parties' use of laymen terminology makes their references to the medical equipment unreliable for purposes of determining what equipment Plaintiff was using on the day in question.

of transport in April 2007.  (*See id.* at Attach. 9-13.)  Thus, while Plaintiff did use an oxygen concentrator, his medical need was not sufficiently serious for a physician to mandate continuous oxygen therapy via a portable tank.

Although the record does not contain a physician's diagnosis to establish a serious medical need, Plaintiff's description of his physical symptoms establishes a genuine issue of material fact with regard to whether he exhibited a serious medical need during transport.  In his complaint, Plaintiff alleges that he "nearly died" because he could not breath during transport. (Compl. at 3.)  Plaintiff asserts that he "informed CO Sgt. T-Cook and his coworker that [he] was experiencing excruciating dizziness, headache, muscle pain, and nausea from suffocating."[2] (*Id.* at 4.)  Defendants note that, although Plaintiff claims that he "nearly died" because of being unable to breath, he did not require medical treatment upon his arrival at LCF.  (Mot. at 4.) Defendant Cook indicated in his affidavit that he does not recall Plaintiff suffering any adverse health effects during transport or needing emergency treatment upon his arrival at LCF.  (Mot. Ex. A-2, ¶ 15.)

The symptoms Plaintiff describes suggest a medical need so obvious that even a lay person would recognize the need for medical treatment.  Although Defendants dispute Plaintiff's allegations, the court cannot resolve a disputed issue of material fact on summary judgment.

---

[2] Plaintiff's Prisoner Complaint contains a declaration under penalty of perjury pursuant to 28 U.S.C. § 1746.  Although Plaintiff did not provide an affidavit in response to Defendants' motion for summary judgment, his complaint, verified in accordance with 28 U.S.C. § 1746, can be treated as an affidavit for purposes of summary judgement.  *See Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988) (noting that, while a nonmoving party may not rely on unsupported or conclusory allegations in the pleadings, a verified complaint may be treated as an affidavit if it satisfies the standards for affidavits set out in Rule 56(e)).

Nevertheless, even assuming that Plaintiff has established a sufficiently serious medical need, he has not demonstrated deliberate indifference on the part of Defendants.

### b. *Deliberate Indifference*

Defendants also argue that there is insufficient evidence that Defendants knew of and disregarded an excessive risk to Plaintiff's safety. Defendants claim that they relied on the Department of Corrections Information System (DCIS) and the staff at CTCF to determine if any restrictions applied to the transport. (Mot. at 9.) In his affidavit, Defendant Cook asserts that orders from the medical department regarding limitations and restrictions are put into DCIS for CDOC staff to reference. (Mot. Ex. A-2, ¶ 9.) According to DCIS, Plaintiff had a temporary permit for an oxygen concentrator, but did not have a permit or medical order to use an oxygen tank during transport.[3] (*See id.* at Attach. 1.) When Plaintiff requested that he be transported with his oxygen tank, Defendants conferred with CTCF staff. They were informed that Plaintiff had been housed in Cell House Five at CTCF and offenders housed in Cell House Five are not allowed to use portable oxygen while housed in that unit. (Mot. Ex. A-2, ¶ 8.) According to CTCF staff, offenders with a medical order for use of an "oxygen bottle" were housed in the infirmary. (*Id.*) CTCF staff also informed Defendants that Plaintiff had an oxygen bottle in his property but did not have a medical order to use an oxygen tank during transport between facilities. (*Id.*, ¶ 6.) Finally, Defendants claim that they also relied on their personal observation

---

[3] The court notes that, while the DCIS report attached to Defendant Cook's affidavit was queried on June 5, 2007, the entry indicating a temporary permit for an oxygen concentrator is dated April 19, 2006, more than one year before the transport at issue in this case, raising a question regarding the accuracy of DCIS information.

that Plaintiff was not using oxygen during their discussions regarding his transport from CTCF to LCF. (*Id.*, ¶ 12.)

Plaintiff does not offer evidence to dispute the evidence provided by Defendants. He only argues that Defendant Cook's affidavit contradicts his responses to Plaintiff's interrogatories because Defendant Cook did not cite DCIS in his interrogatory responses as a source of information for determining whether Plaintiff needed oxygen during his transport back to LCF. (Resp. at 1.) The fact that Defendant Cook now indicates that he relied on DCIS in addition to CTCF staff does not directly contradict his interrogatory responses, although it provides additional information that should have been included in the interrogatory response.

Plaintiff insists that even if Defendant Cook relied on DCIS, "the taking of the Plaintiff's oxygen when Plaintiff informed Cook that he could not breathe [sic] meets the subjective and objective component of the deliberate indifference test." (*Id.*) There is no evidence that Defendants physically took oxygen from Plaintiff while he was using it. Again, CTCF staff indicated that Plaintiff had an "oxygen bottle" in his property, but Plaintiff does not deny that he was not using oxygen while Defendants investigated his request for oxygen during transport.

Plaintiff has not established deliberate indifference on the part of Defendants. In response to Plaintiffs request for oxygen during transport, Defendants investigated whether Plaintiff was authorized to use portable oxygen. They learned from CTCF staff that Plaintiff had been housed in a unit in which the inmates were not allowed to use portable oxygen. CTCF staff also indicated that Plaintiff did not have a medical order to use an oxygen tank during transport. Defendants also searched DCIS and confirmed that Plaintiff had a permit for an oxygen

concentrator but not for a portable oxygen tank.  Finally, Defendants personally observed that Plaintiff was not using oxygen during these discussions.

The evidence does not establish that Defendants knew of and disregarded an excessive risk to Plaintiff's safety.  To the contrary, it suggests that Defendants responded to Plaintiff's request to use oxygen during transport and received information that led them to conclude that oxygen was neither medically mandated nor authorized.  Accordingly, Defendants' motion for summary judgment should be granted.

## 2. *Qualified Immunity*

Defendants also argue that, in the absence of a constitutional violation, they are entitled to qualified immunity.  (Mot. at 5.)  The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Because of the purpose underlying qualified immunity, courts address qualified immunity questions differently from other summary judgment decisions. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).  After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff, who must meet a "heavy two-part burden." *Id.*  The plaintiff must establish both 1) that an officer's conduct violated the plaintiff's federal statutory or constitutional rights, and 2) that the rights in question were clearly established at the time of their alleged violation. *See*

*Thomas v. Durastanti*, 607 F.3d 655, 662 (10th Cir. 2010). If the plaintiff fails to satisfy either part of this "heavy two-part burden," the court must grant the defendant qualified immunity and dismiss the deficient claims.

Plaintiff has not met his burden here. As described above, Plaintiff has not established that Defendants violated his rights under the Eighth Amendment because he has not established that Defendants were deliberately indifferent to his serious medical need. Accordingly, the court need not address whether such rights were clearly established. *See Thomson v. Salt Lake Cnty*, 584 F.3d 1304, 1312, n.2 (10th Cir. 2009).

Having determined that Plaintiff's Eighth Amendment claim fails on the merits, the court need not address Defendants' remaining argument regarding insufficient evidence of physical injury to support compensatory damages.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that Defendants' Motion for Summary Judgment (Doc. No. 58) be GRANTED.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 18th day of August, 2010.

BY THE COURT:

[signature]

Kathleen M. Tafoya
United States Magistrate Judge